IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| WILLIE H. WILLIAMS, JR., : | |
| : | |
| Plaintiff, : | |
| : | |
| VS. : | |
| : | 1 : 10-CV-127 (WLS) |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

## RECOMMENDATION

The Plaintiff herein filed this Social Security appeal on September 24, 2010, challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.  "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

*Administrative Proceedings*

Plaintiff filed an application for Supplemental Security Income on April 9, 2007. (Tr. 14).  His claims were denied initially and upon reconsideration.  (Tr. 53-55, 58-60).  A hearing was held before an Administrative Law Judge ("ALJ") in Thomasville, Georgia on January 27, 2009.  (Tr. 14, 82).  Thereafter, in a hearing decision dated February 24, 2009, the ALJ determined that the Plaintiff was not disabled.  (Tr. 14-21).   The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner.  (Tr. 1-3).

*Statement of Facts and Evidence*

The Plaintiff was forty-three (43) years of age at the time of the hearing before the ALJ, and alleged disability since April 9, 2007, primarily due to two herniated discs in his back. (Tr. 27, 16). Plaintiff has a high school degree and attended some college at Southwestern Georgia Technical College. (Tr. 27).  He has past relevant work experience as fast-food worker, janitor, and security guard. (Tr. 21, 165-72).

As determined by the ALJ, Plaintiff suffers from the following severe impairments: mild degenerative disc disease of the lumbar spine at L5-S1, limited (low average) intellectual

functioning, and dysthymia. (Tr. 16). The ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and he remained capable of performing a limited range of medium work. (Tr. 18). The ALJ found that Plaintiff could perform medium work as follows:

> [C]laimant has the residual functional capacity to preform the full range of medium work, except his ability to understand, remember and carry out complex instructions is markedly limited (meaning seriously limited but not precluded) and his capacity for detailed instructions is moderately limited (meaning limited but satisfactory).

(Tr. 18). The ALJ also determined, following the testimony of the Vocational Expert, that Plaintiff could perform his past relevant work, and was thus not disabled. (Tr. 21).

## DISCUSSION

Plaintiff alleges that the ALJ failed to properly consider the evidence that Plaintiff's impairments met or medically equaled listing 12.05, and the ALJ failed to properly assess Plaintiff's past relevant work. (Doc. 14).

*Medical listing 12.05*

Plaintiff asserts that the ALJ erred in finding that his impairments did not meet or equal Listing 12.05, which addresses disability based on mental retardation. 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App 1. In order to establish that his impairments meet or equal one or more of those set out in the List of Impairments (Appendix 1, 20 C.F.R. Part 404), a claimant must present specific medical findings that meet the tests for the applicable impairment or medical evidence that demonstrates how the impairment is equivalent to the listings. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) (finding the plaintiff must "present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present

3

medical evidence which describes how the impairment has such an equivalency"); *Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 12.05, entitled "Mental retardation", provides that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." Part B of this listing dictates a finding of disability when a claimant has a "valid verbal, performance, or full scale IQ of 59 or less", and Part C dictates a finding of disability when a claimant has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" *Id.*  Therefore, "[t]o be considered for disability under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

*IQ Scores*

Plaintiff first maintains that the ALJ erred by erroneously discounting Plaintiff's IQ scores. (Doc. 14).  The Commissioner asserts that there is substantial evidence in the record to support the ALJ's decision that Plaintiff's IQ scores are invalid.  (Doc. 16).

A claimant meets the criteria for presumptive disability under 12.05 when his IQ score meets the required listing scores.  *See Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).  However, the ALJ must first make a determination regarding the validity of the IQ score.  *Thomas v.*

*Barnhart*, 2004 WL 3366150, *2 (11th Cir. Dec. 7, 2004).  "The Commissioner is not required to accept a claimant's I.Q. scores, however, and may reject scores that are inconsistent with the record."  *Clark v. Apfel*, 141 F.3d. 1253, 1255 (8th Cir. 1998).  The test results should be examined to assure consistency with Plaintiff's daily activities and behaviors.  *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (citing Listing 12.00B4).  Thus, to determine if scores are invalid, the ALJ may rely on external evidence of invalidity, such as a claimant's participation in activities inconsistent with the IQ scores.  *See id.*; *Thresher v. Astrue*, 283 Fed. Appx. 473, 475, n. 6 (9th Cir. 2008) (citing several circuits' interpretation of evidence relied on to determine validity of scores).

  Herein, the ALJ determined that Plaintiff's IQ tests were not valid because Plaintiff put forth very little effort during the tests, and there were indications of malingering.  (Tr. 17, 20). Additionally, the ALJ found Plaintiff's ability to sustain competitive employment to be inconsistent with the test scores.  (Tr. 20).  In December of 2004, Dr. Karl Willers evaluated Plaintiff and found that Plaintiff had a verbal IQ of 61, a performance IQ of 62, and a full scale IQ of 58. (Tr. 331).  Dr. Willers noted that Plaintiff appeared to give the test adequate attention, but had a "rather lackadaisical and effortless style" and gave up quickly on items in the test.  (Tr. 331).  Plaintiff tested at a fourth grade level for recognizing words, and a sixth grade level for spelling.  (Tr. 332). Dr. Willers did not find any "outstanding signs of gross central nervous system problems with regard to visual motor functioning." (Tr. 332).  Overall, Plaintiff presented a "traditional lack of energy and sophistication to address significant and longstanding deficits in language skills and cognitive resources." (Tr. 332).  Dr. Willers noted that "[i]t is unlikely [Plaintiff] will motivate himself to improve his status." (Tr. 332).

  Two years later, Dr. Garmon administered another IQ test, wherein Plaintiff scored a verbal IQ of 63, a performance IQ of 62, and a full scale IQ of 59. (Tr. 236).  Dr. Garmon noted that

Plaintiff was "lackadaisical and put forth very little effort[,] . . . [h]e gave up easily and did not attempt to answer some questions." (Tr. 236). Dr. Garmon determined Plaintiff would be capable of managing his own money. (Tr. 238). Overall, Dr. Garmon found that the results of the IQ test were an underestimate of Plaintiff's true intellectual abilities, and cautioned as to the validity of the test results. (Tr. 236-37).

The record also contains a Psychiatric Review Technique that, based on the evidence, found Plaintiff did not have a functional limitation that met a Listing. (Tr. 283-85). Plaintiff does testify that he is unable to keep a checkbook because he does not understand it, and his girlfriend stated that if Plaintiff goes to the store he brings back the wrong change. (Tr. 29-30, 235). However, during his testimony at the ALJ hearing, Plaintiff appeared to follow the questions asked and to answer the questions appropriately and without difficulty. (Tr. 27-41). Plaintiff completed high school and earned a regular diploma, has completed some technical college, and has sustained competitive employment. (Tr. 234, 329, 405). While Plaintiff reported that he failed out of college, he testified it was because he did not go to class due to his back pain. (Tr. 27-28). Additionally, Plaintiff states that he uses the telephone, watches television with his girlfriend, goes to church, and at one time he did have a driver's license, though the test had to be read to him because he did not understand the questions. (Tr. 29, 235).

There is substantial evidence to support the ALJ's finding that Plaintiff's IQ scores are not valid. Based on the medical assessments from both Drs. Willers and Garmon, it appears Plaintiff put forth little effort and was lackadaisical during the IQ tests. Dr. Garmon explicitly stated that the scores should be viewed with caution, and are believed to be an underestimate of Plaintiff's true ability. Furthermore, Plaintiff's social, educational, and work activities and behaviors provide substantial evidence that the IQ scores are invalid. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th

Cir. 1992) (recognizing that an IQ score is not conclusive if the score is inconsistent with other evidence in the record); *Davis v. Astrue*, 2008 WL 2939523, *4 (M.D. Ala. July 25, 2008) (finding the ALJ did not err when he discredited the claimant's IQ scores because the claimant completed twelfth grade; was able to read, write, and perform simple math; was engaged and able to follow the questioning during her testimony at the ALJ hearing; had a valid driver's license; and performed semi-skilled employment); *Lyons v. Astrue*, 2009 WL 1657388, *10-11 (M.D. Fla. June 10, 2009) (finding the claimant was not disabled because the evidence showed he had obtained a high school diploma, did not take special education classes, could take care of his personal needs, and there was evidence that he was malingering when he took the intelligence tests). Thus, there is substantial evidence to support the ALJ's decision that Plaintiff's IQ scores are invalid.

Plaintiff also maintains that the ALJ erred by not giving greater weight to the opinion of Dr. Wager, an alleged treating physician. (Doc. 14). The ALJ explicitly rejected Dr. Wager's statements because his opinion is "not well supported and is inconsistent with objective findings documented in claimant's mental health treatment records from GA Pines Community Mental Health Services[,]. . . as well as claimant's work history." (Tr. 20). Initially, it is important to note that Dr. Wager only examined Plaintiff on one occasion during his treatment at Georgia Pines. (*See* Tr. 404-420). A doctor is not given great weight as an examining physician if he only examines Plaintiff on one occasion. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11 th Cir. 2004) (treating physician was not given great weight because she only examined the claimant once); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (a doctor who examines a patient one time is not considered a "treating physician"). Accordingly, the ALJ did not err when he determined Dr. Wager's opinion should not be given great weight.

Additionally, as discussed above, there is substantial evidence in the record to support the

7

ALJ's decision that Plaintiff's IQ scores were invalid.  Additionally, Georgia Pines determined that Plaintiff had a Global Assessment Functioning Score between 53 and 60, which indicates some moderate symptoms or generally functioning with some difficulty.  (Tr. 413).  The medical evidence shows that Plaintiff is able to spell words backwards, is able to spell words such as "heaven", "educate", and "purchase", and Plaintiff agrees that he would be able to write a letter to someone. (Tr. 235, 332).  Treatment notes from Georgia Pines indicate that Plaintiff had vague auditory hallucinations in August and November of 2008; however, Dr. Wager reported that the hallucinations had stopped, and Dr. Garmon noted Plaintiff had no indications of perceptual differences.  (Tr. 406-07, 427, 236).  Overall, Dr. Wager found that the two IQ scores were valid. (Tr. 428). Yet, Dr. Wager was merely relying on the treatment notes from Georgia Pines and the medical assessments provided by Drs. Willers and Garmon, including Dr. Garmon's assessment which questioned the validity of the IQ scores.

As there is substantial evidence to support the ALJ's determination that the IQ scores are invalid, and that Dr. Wager's report is inconsistent with the record, the ALJ did not commit reversible error when he found Plaintiff's IQ scores to be invalid.

*Adaptive Functioning Deficits*

Plaintiff asserts that he has deficits in adaptive functioning that initially manifested during his development period, and thus, meet the severity requirements of Listing 12.05. (Doc. 14).  A claimant must show "concurrent deficits or impairments in present adaptive functioning . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-directing, functional academic skills, work, leisure, health, and safety."  *Yates v. Astrue*, 2009 WL 5207483, *6 (S.D. Ala. Dec. 30, 2009) (citing Diagnostic and Statistical Manual of Mental Disorders 49 (4th ed. Text Rev. 2000)); *Carter v. Astrue*, 2009 WL

2750987, *2 (M.D. Ga. Aug. 26, 2009).

As stated above, Plaintiff completed high school and earned a regular diploma, did not take special education classes, completed some technical college, and sustained competitive employment for several years. (Tr. 234, 329, 405). While Plaintiff reported that he failed out of college, he testified it was because he did not go to class due to his back pain. (Tr. 27-28). Plaintiff testified that he spends twenty (20) hours a day in his room, his only responsibility is making his bed, and he mostly just lies around watching television. (Tr. 33, 38). The ALJ found Plaintiff's testimony to be less than credible based on the evidence in the record, which shows, for example, that Plaintiff uses the telephone, watches television with his girlfriend, goes to church, and at one point, had a valid driver's license. (Tr. 19, 29, 235).

There is substantial evidence in the record to show that Plaintiff does not have sufficient deficits in adaptive functioning to meet the introductory paragraph of Listing 12.05. *See Harris v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 813, 815 (11th Cir. 2009) (finding claimant did not have necessary deficits in adaptive functioning when he performed well in special education classes, was able to hold several jobs, could dress and bathe himself, take care of his personal needs, and manage money); *Garrett v. Astrue*, 244 Fed. Appx. 937, 939 (11th Cir. 2007) (finding no adaptive functioning deficits when the claimant was able to perform simple chores, attend church, watch television, play cards, walk in the mall, and the claimant testified with proper instruction he could return to his job as a stock assistant). Regardless of the fact that Plaintiff does not have a valid IQ score, there is substantial evidence to also show that Plaintiff does not have deficits in his adaptive functioning. As there is substantial evidence to show Plaintiff's IQ scores are invalid and he does not have deficits in adaptive functioning, the ALJ did not err when he determined that Plaintiff did not meet Listing 12.05.

*Relevant past work*

Plaintiff maintains that the ALJ erred when he determined that Plaintiff possessed the skills necessary to perform his past relevant work. (Doc. 14).

A claimant bears the burden of proving that he cannot perform his past relevant work either as he performed it or as it is generally performed in the national economy. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). When determining if Plaintiff can return to his past relevant work, the ALJ must determine Plaintiff's RFC, using the evidence contained in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The ALJ may use the testimony of a Vocational Expert ("VE") to determine if Plaintiff can return to his past work because the VE may offer knowledge concerning the physical and mental demands of Plaintiff's past relevant work. *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 Fed. Appx. 343, 346 (11th Cir. 2005); 20 C.F.R. § 404.1560(b)(2).

Herein, the ALJ questioned a VE to help determine if Plaintiff could return to his past relevant work. (Tr. 41 – 45). The ALJ asked the VE to assume an individual with Plaintiff's age, education, work experience, and RFC. (Tr. 41– 42). The ALJ then asked the VE if such an individual could perform any of Plaintiff's past relevant work, either as Plaintiff performed it or as it is generally performed in the national economy. (Tr. 42). The VE testified that an individual with Plaintiff's mental impairments and RFC could perform Plaintiff's past relevant work as a fast food worker, janitor, and security guard. (Tr. 21, 42). The VE further testified that his testimony was consistent the Dictionary of Occupational Titles ("DOT"). (Tr. 42).

The VE testified that Plaintiff could perform the job as Plaintiff performed it and as performed generally in the national economy. Thus, Plaintiff's allegation that the ALJ failed to develop the

record and take into account Plaintiff's work as he actually performed it is without merit. The ALJ relied on the testimony of the VE and the DOT to determine that Plaintiff could return to his past relevant work; thus, there is substantial evidence to support the ALJ's decision. *See* 20 C.F.R. § 404.1560(b)(2); *Savor v. Shalala*, 868 F. Supp.1363, 1364-65 (M.D. Fla. 1994). As there is substantial evidence, any error in regard to the ALJ's perceived failure to further develop the record is harmless. *See Waldrop v. Comm'r of Soc. Sec.*, 379 Fed. Appx. 948, 953 (11th Cir. 2010) ("even if the ALJ erred by failing to ask additional questions about the physical demands posed by [the claimant's] past work . . ., this error did not prejudice [the claimant], as [the] expert testimony demonstrated that [the claimant] could perform the job as performed in the general economy."); *Newell v. Astrue*, 2009 WL 3157661, *8 (M.D. Fla. Sept. 25, 2009) (any error in regard to further developing the record to determine if the claimant could perform past relevant work was harmless because the ALJ relied on the VE's testimony).

*Conclusion*

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 31st day of August, 2011.

s/ ***THOMAS Q. LANGSTAFF***

**UNITED STATES MAGISTRATE JUDGE**

llf