**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

WILLIE H. WILLIAMS, JR., :
:
Plaintiff, :
:
v. : CASE NO.: 1:10-CV-127 (WLS)
:
MICHAEL J. ASTRUE, *Commissioner of Social Security*, :
:
Defendant. :
:

**ORDER**

Before the Court is a Report and Recommendation from United States Magistrate Judge Thomas Q. Langstaff, filed August 31, 2011. (Doc. 18). It is recommended that the Social Security Commissioner's final decision be affirmed.[1] (Id.) Plaintiff timely filed an Objection, which challenges the Recommendation for its alleged engagement in improper fact finding and erroneous conclusions. (Doc. 19). On September 28, 2011, the Commissioner filed a timely Response to Plaintiff's objection. (Doc. 20). On these grounds, Plaintiff requests reversal and remand. (Id.)

**DISCUSSION**

**I. Standard of Review for Social Security Appeals**

"[T]he federal courts' "'review of the [ALJ's] decision is limited to an inquiry into whether there is substantial evidence to support [its] findings . . . and whether the correct legal standards were applied.'" Powell v. Astrue, 250 Fed. App'x 960, 962 (11th Cir. 2007) (quoting Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)). This is a "highly deferential

[1] Pursuant to the Appeals Council's denial of Plaintiff's request for review, the Administrative Law Judge's February 24, 2009 decision, which determined that Plaintiff was not disabled, became the final decision of the Commissioner of the Social Security Administration. (Doc. 16 at 2).

standard of review." Id. at 963. The Court is forbidden from reweighing the evidence or substituting its judgment for that of the ALJ. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Even if the evidence preponderates against the Commissioner's findings, [the court] must affirm if the decision reached is supported by substantial evidence." Crawford v. Comm'r, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id.

"[T]he ALJ's failure [to specifically address evidence] only constitutes reversible error if it created an evidentiary gap that caused unfairness or clear prejudice." Caldwell v. Barnhart, 261 Fed. App'x 188, 190 (11th Cir. 2008) (citing Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995)); *see also* Dyer, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)) "[T]he ALJ's decision [simply] . . . [can]not [be] a broad rejection[,] which is 'not enough to enable this Court to conclude that the ALJ considered [the claimant's] medical conditions as a whole.'").

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ....“ 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ....“ 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester v. Bowen, 792 F.2d 129, 131 (1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 11th Cir.1987).

Having established the applicable standard of review of Plaintiff's social security appeal, the Court turns to its discussion of each of Plaintiff's objections on which he bases his request for the Court's reversal of the Commissioner's decision and remand to the Commissioner.

## II. Plaintiff's Objections

### a. Objection 1: The ALJ erroneously discounted validity of Plaintiff's I.Q. test scores.

Plaintiff objects to the Report and Recommendation to the extent that it recommends adopting the ALJ's finding that Plaintiff did not meet Listing 12.05C. Plaintiff notes that his I.Q. test scores consistently resulted in scores below 70, and in addition he has significant physical

and mental impairments, including: mild degenerative disc disease of the lumbar spine, limited intellectual functioning, and dysthymia. (Doc. 12-2 at 17, 33-37). For these reasons, Plaintiff asserts he has satisfied his burden to support a finding of disability under Step 3. (Doc. 19).

The Commissioner's rules provide that if the claimant has an impairment that is listed in or equal to an impairment listed in Appendix 1, Subpart P, following 20 C.F.R. § 1599, then a finding of disability will be made at Step 3 without considering the claimant's age, education, and work experience. 20 C.F.R. § 1520(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892 (1990) (emphasis by the Court). A claimant is entitled to benefits if it is shown that his or her limitations meet, or are medically or functionally equal to, the limitations set forth in the Listing. Shinn ex rel. Shin v. Commissioner, 319 F.3d 1276, 1282 (11th Cir.2004). The claimant has the burden of proving that his impairments meet or equal a listed impairment by presentation of specific evidence of medical signs, symptoms, or laboratory test results meeting all of the specified medical criteria. Sullivan v. Zebley, 493 U.S. at 530, 110 S.Ct. at 891. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (emphasis by the Court).

Listing 12.05C provides in relevant part:

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a *valid* I.Q. test score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir.1992).

Here, a critical part of the ALJ's analysis turned on the validity of Plaintiff's I.Q. test score. If the ALJ found that Plaintiff's I.Q. test score was valid, he would have met the criteria for presumptive disability at Step 3. *See* 20 C.F.R. § 1520(d). However, under applicable law, "[a] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior." Id. (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir.1986) (holding that it is also appropriate to consider medical reports, daily activities, behavior, and other evidence in the record when determining validity of I.Q. test scores). Based on the record before the Court, the Court agrees with the Magistrate Judge and finds that the record supports the ALJ's finding that Plaintiff's I.Q. test scores are invalid. It is well-established than an ALJ can reject scores that are inconsistent with the record. The record before the Court shows that significant evidence showed Plaintiff's I.Q. test scores may have been affected by his "lack of effort" during the administration of his I.Q. tests. (Doc. 12-2 at 21). Moreover, as the ALJ noted, and the Magistrate Judge emphasized, there exists evidence on the record detailing Plaintiff's social, educational, and employment history that is inconsistent with his low I.Q. test scores. (*See* Docs. 12-2 at 17-22 and 18). The record also reflects that Plaintiff completed high school and had some college experience. (Id.)

Plaintiff also notes that several professionals believe that Plaintiff is mildly mentally retarded and the ALJ erroneously considered Plaintiff's ability to function based on his

performance at the hearing. (Doc. 19). The Court has considered Plaintiff's arguments; and while Plaintiff's I.Q. test scores suggest mild mental retardation, they are not dispositive of the question of whether he can work. The ALJ found that Plaintiff's social, educational, and work histories did not support a finding of impairment consistent with his I.Q. tests scores if taken alone, and thus questioned the validity of Plaintiff's scores. Considering this, the ALJ did not accept Plaintiff's I.Q. test scores as a valid indicator of his life-long abilities when balanced against other factors in Plaintiff's background. The Court finds that the ALJ, as noted by the Magistrate Judge, reviewed and detailed a significant amount of evidence upon which he made his determination as to Plaintiff's mental capacity and overall limitations. Plaintiff's Objection entreats the Court to reweigh the AJL's credibility determinations and use its judgment against that of the ALJ. (*See generally* Doc. 19). This, however, does not comport with the Court's deferential standard of review as required.

The ALJ's decision that Plaintiff's mental functional capacity as illustrated by his I.Q. test scores and the evidence of his daily activities does not create a disability—as evidenced by the ALJ's discussion of his findings. (Doc. 12-2 at 16-22). The ALJ's findings are clearly articulated and supported by substantial evidence in the record, and thus will not be reversed or remanded by this Court. The Court rejects Plaintiff's arguments as stated in his Objection to the ALJ's findings regarding the validity of his I.Q. test scores. Further, the Court agrees with the Magistrate Judge's Recommendation. In sum, Plaintiff's objection alleging that the ALJ's determination that Plaintiff's I.Q. test scores were invalid was erroneous is **OVERRULED**.

**b. <u>Objection 2: ALJ erroneously found Plaintiff is capable of performing relevant past work.</u>**

Plaintiff objects to the Magistrate Judge's Recommendation that this Court accept the ALJ's finding that Plaintiff possesses the ability to perform relevant past work. (Docs. 18 and

19). Plaintiff argues that the ALJ failed to sufficiently develop the record in reference to the extent of supervision Plaintiff required when he worked previously. (Doc. 19). To this end, Plaintiff contends this Court should reject the ALJ's findings because Plaintiff requires a high level of supervision such that he is not able to function in a manner consistent with the ALJ's findings. (Id.)

Plaintiff also asserts that the ALJ failed to question Plaintiff and fully develop the record regarding his interactions with coworkers, supervisors and the general public in order to assess the extent of Plaintiff's alleged impairment and ability to perform relevant past work. (Doc. 19). According to Plaintiff, this additional development of the record would have supported a finding that Plaintiff's necessary accommodations conflicted with the testimony of the Vocational Expert regarding the demands of Plaintiff's previous relevant work. As the Magistrate Judge noted, the ALJ presented the Vocational Expert with the facts of the instant case and relied upon the testimony of the expert in his findings. However, the record also contains independent support that an individual with Plaintiff's mental impairments could perform Plaintiff's past relevant work as a fast food worker, janitor, and security guard. (*See generally* Doc. 12-2).

It appears to the Court that the ALJ based his findings on the contents of the record as a whole and was persuaded by facts in addition to the Vocation Expert's testimony. For example, based on the record, the ALJ found Plaintiff's testimony concerning his ability to perform work to be "less than credible." (Doc. 12-2 at 17-22). Plaintiff also testified that he uses the telephone, watches television with his girlfriend, goes to church, and at one point, had a valid driver's license. (*See* Doc. 18). Each of these facts support the ALJ's finding that Plaintiff is capable of performing past relevant work. The ALJ's determination that Plaintiff could perform work was based on several sources, including Plaintiff's testimony, the testimony of a

Vocational Expert, the Dictionary of Occupational Titles, and Plaintiff's educational, social, and work history –including his experience as a fast food worker, janitor, and security guard. (*See generally* Doc, 12-2 at 16-22). While Plaintiff is correct that the ALJ is required to specifically state the weight accorded to each item of evidence and why he reached that decision, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision and the ALJ may implicitly make a determination. *See* Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); Kemp v. Astrue, 308 Fed. App'x 423, 426 (11th Cir. 2009) (citing Hutchison v. Bowen, 787 F.2d 1961, 1963 (11th Cir. 1986)); Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Court notes that the ALJ stated in his decision that the Plaintiff is "capable of meeting the demands of his past relevant work as actually and generally performed in the national economy . . . These jobs as the claimant performed required light exertion."[2] (Doc. 12-2 at 22). Based on these facts, the Magistrate Judge found, and the Court agrees that there is substantial evidence in the record to show that Plaintiff has residual functional capacity to perform medium work. The Court finds that the ALJ did not err in assessing Plaintiff's ability to perform past relevant work. For all of the foregoing reasons, Plaintiff's objections with respect to the ALJ's findings that Plaintiff can perform past relevant work are **OVERRULED.**

For all of the foregoing reasons, the Court holds that none of the grounds raised by Plaintiff's Objection (Doc. 19) evidences the ALJ's commission of reversible error. Accordingly, the objections set forth in Plaintiff's Objection (Doc. 19) are **OVERRULED** and United States Magistrate Judge Langstaff's August, 31, 2011 Report and Recommendation (Doc.

---

[2] *Compare.,* Hurtado v. Commissioner of Social Sec., 2011 WL 1560654 at * 2 (11th Cir. Apr. 25, 2011) (claimant who suffered from bipolar disorder, major depressive disorder, obsessive compulsive disorder, and osteoarthritis of the hips and lumbar spine was not disabled, even though she could not perform her past relevant work as an elementary school teacher, since she was capable of performing simple routine work in positions which were available in significant numbers in the national and local economies, including fast food worker and mail clerk).

18) is **ACCEPTED, ADOPTED** and made the Order of this Court for reason of the findings made and reasons stated therein together with the reasons stated and conclusions reached herein. Accordingly, the Social Security Commissioner's final decision is **AFFIRMED**.

**CONCLUSION**

In consideration of the above discussion, the objections set forth in Plaintiff's Objection (Doc. 19) are **OVERRULED** and United States Magistrate Judge Langstaff's August 31, 2011 Report and Recommendation (Doc. 18) is **ACCEPTED, ADOPTED** and made the Order of this Court for reason of the findings made and reasons stated therein together with the reasons stated and conclusions reached herein. Accordingly, the Social Security Commissioner's final decision is **AFFIRMED**.

**SO ORDERED**, this 29th day of September 2011.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**